## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EARL PURSELL III and MONICA PURSELL | ) ) |
| Plaintiffs, | ) |
| vs. | ) ) |
| HYDROCHEM LLC, d/b/a HYDROCHEMPSC, ET AL., | ) ) |
| Defendants. | ) ) |
| HYDROCHEM, LLC | ) ) |
| Third-Party Plaintiff | ) ) |
| vs. | ) ) |
| MILLER ENVIRONMENTAL, LLC | ) ) |
| Third-Party Defendant | ) ) ) |

Case No. 3:20-CV-1188-MAB

## **MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

On June 17, 2022, Third-Party Plaintiff Hydrochem, LLC filed a motion to exclude the expert opinions of James Ungart, Third-Party Defendant Miller Environmental's retained expert witness (Doc. 130). Miller Environmental filed a response in opposition (Doc. 140), and Hydrochem filed a reply (Doc. 145). Also on June 17, Miller Environmental filed a motion to exclude the expert opinions of Russell Ogle, Hydrochem's retained expert (Doc. 133). Hydrochem filed a response in opposition (Doc.

138) and Miller Environmental filed a reply (Doc. 146). On October 18, 2022, the Court held a hearing on the motions to exclude and allowed each party to offer oral argument in support of their respective positions. After hearing from both parties, the Court opted to rule on the record and denied both motions to exclude. The Court outlined its reasons on the record and provides this as a summary written order.

## DAUBERT STANDARD

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also* L*ewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Indeed, the *Daubert* standard applies to all expert testimony, whether it is based on scientific competence or other specialized or technical experience. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

Specifically, Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[1] Under Rule 702, "an expert witness may testify about a scientific issue in contention if the testimony is based on sufficient data and is the product of a reliable methodology correctly applied to the facts of the case." *Vandervelden v. Saint Louis Univ.*, No. 3:18-CV-1333-NJR, 2022 WL 672753, at *2 (S.D. Ill. Mar. 7, 2022).

The trial court functions as the "gatekeeper" with respect to exert testimony in order to ensure that the testimony is both relevant and reliable. *See generally Daubert v.* 509 U.S. at 595, 113 S.Ct. 2786; *Lees v. Carthage College,* 714 F.3d 516, 521 (7th Cir.2013). In exercising its gatekeeping function, the court must ask three questions before admitting expert testimony: is the expert qualified, is the expert's methodology reliable, and will the expert's testimony assist the trier of fact in understanding the evidence or determining a fact in issue. *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir.2010).

However, "the key to the gate" is not the ultimate correctness of the proposed expert's conclusions, but is instead the soundness and care with which the expert arrived at the opinion. *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). "So long as the principles and methodology reflect reliable scientific practice, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

---

[1] Federal Rule of Evidence 703 also governs expert opinions and provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

3

proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id. (*quoting *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786).

An expert must explain the methodologies and principles that support his or her opinion; he cannot simply assert bottom line conclusions. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). The trial court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)) (emphasis in original). "The critical inquiry is whether there is a *connection* between the data employed and the opinion offered." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (quotation omitted) (emphasis in original).

## DISCUSSION

On October 18, 2022, the Court ruled on the record and denied both Hydrochem and Miller Environmental's motions to exclude. In so doing, the Court noted that it had carefully reviewed the briefs prior to the hearing, both Mr. Ogle and Mr. Ungart's reports, as well as the excerpts of their deposition testimony that had been provided as exhibits in the briefing. The Court provides this summary order to address some of the primary arguments advanced by the parties.

With respect to Mr. Ogle, Miller Environmental's primary critique was that Mr. Ogle's opinions amounted to bottom line conclusions and that the basis for his conclusions was simply his credentials. Mr. Ogle is a licensed professional engineer and has a Ph.D in Chemical Engineering, to note just a few of his academic achievements. But

4

as outlined on the record, this contention is without merit. Mr. Ogle's expert report (Doc. 138-1, pp. 29-54), for example contains a detailed explanation of his opinions, of the facts and data upon which he relies, and the methodology or process he uses to arrive at his conclusions. Nor can there be any suggestion that Mr. Ogle did not reliably apply his process to the facts of the case. Indeed, his report goes to great length to explain his opinions and how he arrived at those opinions.

Miller Environmental's motion attacking Mr. Ogle offers a litany of arguments in an attempt to exclude Mr. Ogle's opinions. However, all of these arguments are non-starters. The subject matter at issue in this dispute is highly technical and complex and in the Court's review of Mr. Ogle's proffered opinions, the Court believes they will aid the trier of fact in understanding the evidence. Nor does the Court find, as a general matter, that Mr. Ogle's proffered opinions invade the province of the jury or are based on speculation and pure conjecture. Indeed, Mr. Ogle is eminently qualified to serve as an expert, his testimony will be helpful, it is based on facts and data and he has reliably applied his principles and methods to facts of this case.

With respect to Mr. Ungart, the primary critique of him by Hydrochem at the oral argument was twofold: Mr. Ungart has no educational background that qualifies him to serve as an expert witness and that there was an error or miscalculation in his opinions. But while Mr. Ungart may not have the academic credentials that Mr. Ogle does (Mr. Ungart is a high school graduate), he worked in the chemical cleaning industry for 18 plus years. Indeed, he worked for Hydrochem for a period of time and he has worked on job sites and projects similar to the turn around job at issue in this case. The notion

that *Daubert* requires particular credentials for an expert witness is "radically unsound" and the Rules of Evidence, "which *Daubert* interprets rather than overrides, do not require that expert witnesses be academics or PhDs, or that their testimony be 'scientific' (natural scientific or social scientific) in character." *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). Indeed, "[a]nyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Id*. The Court believes that Mr. Ungart's experience and background in the chemical cleaning industry is the type of real world practical experience in a highly technical subject matter that will be helpful to the finder of fact.

Indeed, Mr. Ungart's expert report (Doc. 130-2, pp 1-6) makes clear that he reviewed facts and data applicable to this case and then utilized his experience in the field of chemical cleaning and working on similar jobs to responsibly arrive at his opinions. Although Hydrochem critiques Mr. Ungart for not applying certain standards provided by the National Fire Protection Association ("NFPA"), Hydrochem failed to point this Court to any form of authority that *required* Mr. Ungart to specifically employ the NFPA standards. Indeed, Hydrochem conceded as much at oral argument. Miller Environmental' s response in opposition provided example cases that made clear the NFPA is merely a guide for investigations of fires or explosions and not a required standard that must be employed (*See* Doc. 140, pp. 10-13).

Hydrochem also discussed an error in a mathematical calculation made by Mr. Ungart and used this as an attack on his ability to serve as an expert. But this is an attack on credibility, not admissibility. A challenge to an expert's "miscalculation" or

6

mathematical error goes to weight of the evidence, not admissibility. *Schwarz v. Nat'l Van Lines*, No. 03 C 7096, 2005 WL 8177605, at *1 (N.D. Ill. Sept. 22, 2005); *Traharne v. Wayne Scott Fetzer Co.,* 156 F. Supp. 2d 717, 723 (N.D. Ill. 2001) ("Factual inaccuracies are to be explored through cross-examination and go toward the weight and credibility of the evidence not admissibility.").

Hydrochem's briefing on its motion to exclude offers a litany of arguments, but all of these arguments were covered at the oral argument (e.g., contending Mr. Ungart's opinions are speculative, without adequate basis, unreliable, etc.). Moreover, as noted at the oral argument, these arguments are non-starters as they all go to the weight of the evidence rather than admissibility.

Ultimately, after a careful review of all the briefs, expert reports, and relevant deposition transcripts, the parties critiques of each other's expert witnesses all go toward the weight of the evidence, not the admissibility of the proffered opinions. Both experts will be permitted to testify, subject to vigorous cross-examination and the jury will assess what weight, if any, to give each of the experts and their opinions. Both Mr. Ungart and Mr. Ogle are qualified, have utilized a reliable methodology in arriving at their opinions, and both experts will assist the trier of fact in understanding a very technical subject matter.

## CONCLUSION

For the reasons outlined on the record at the October 18th motion hearing and for the reasons outlined in this Memorandum and Order, Hydrochem's motion to exclude

the expert opinions of James Ungart (Doc. 130) and Miller Environmental's motion to exclude the expert opinions of Russell Ogle (Doc. 133) are **DENIED**.

**IT IS SO ORDERED.**

**DATED: October 21, 2022**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**
