IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EARL PURSELL III AND MONICA PURSELL, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 3:20-cv-01188-MAB ) ) |
| HYDROCHEM, LLC, ET AL., | ) ) |
| Defendants. | ) ) ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Currently before the Court are six motions *in limine* filed by Third-Party Defendant Miller Environmental, LLC ("Miller") (Doc. 190). For the following reasons, Motion 5 and 15 are **GRANTED**; the Court **RESERVES** ruling on Motions 10 and 14; and Motions 9, 11, and 12 are **DENIED**.

## LEGAL STANDARD

Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT& T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the

party seeking to exclude evidence "has the burden of establishing the evidence is not admissible for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009).

Denial of a motion *in limine* does not mean all evidence contemplated by the motion will be admitted at trial. *Hawthorne*, 831 F.Supp. at 1401. Rather, denial means the court cannot determine whether the evidence in question should be excluded outside of the trial context. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *Id*.

## DISCUSSION

### Motion *in Limine* No. 5

Miller moves to bar testimony or argument regarding the presence of "dead-zones" in the quench column at issue in this case (Doc. 190). Defendant/Third-party Plaintiff HydroChem, LLC's ("HydroChem") expert, Russel Ogle, opined in deposition that dead zones, described as areas of the column missed by Miller chemicals during the decontamination process, are a "plausible hypothesis to explain the presence of pyrophoric and toxic material in the incident column" (Doc. 199-4 at 26). Miller argues that Ogle has insufficient evidence to support this hypothesis, and testimony regarding this hypothesis will not assist the trier of fact (Doc. 190).

In its response, HydoChem argues that Ogle's expert report cites various scientific literature discussing "the importance of contacting pyrophoric iron sulfide with

permanganate solution in the decontamination procedure" (Doc. 192). However, in his deposition testimony, Ogle concedes that there is insufficient evidence to support his hypothesis regarding dead zones (Doc. 190-4 at p. 26). Thus, to the extent Ogle intends to testify about such a conclusion, is inadmissible based on Ogle's own testimony. *See Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 893 (E.D. Wis. 2010) (granting motion in limine to exclude expert testimony based on insufficient data; noting that expert testimony can be excluded for unreliability alone); *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (holding that an expert's testimony must be "based upon sufficient ... data"); *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995) (holding that a court must "rule out" expert opinions based on "subjective belief or unsupported speculation"). Thus, with respect to Ogle's testimony, the motion *in limine* is **GRANTED**.

Motion *in Limine* No. 9

Miller next asks the Court bar testimony or argument stating or suggesting that Miller did not complete each step of the de-gassing process because HydroChem identified no witness who will offer testimony to support this proposition (Doc. 190). In its response, HydroChem points out that Ogle's conclusion that Miller did not properly complete the de-gassing procedure is based on several pieces of evidence (Doc. 192). As Ogle testified, such a conclusion is based on x-ray fluorescence data provided by Phillip 66, the detection of sulfur dioxide by numerous gas detectors in the area at the time of the incident, and Miller's own witness's testimony that he had no knowledge as to whether the process was completed (Docs. 192-3 at p. 7-8; 192-9 at p. 1-2). Miller's disagreement with such testimony is a matter for cross-examination. *See A.H. v. Illinois*

*High School Ass'n*, 263 F. Supp. 3d 705, 714 (N.D. Ill. 2017) (observing that an expert's opinion must be based on sufficient data and/or facts; however, a party cannot disqualify the other side's expert simply by disputing the facts upon which he relied); *see also Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 809 (7th Cir. 2013) (assuming there is "a rational connection between the data and the opinion," the "expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility"). Thus, the motion *in limine* is **DENIED**.

Motion *in Limine* No. 10

Next, Miller seeks to exclude evidence from HydroChem's FED. R. CIV. P. 30(b)(6) witness, Jeffrey Reese, that "no sulfur was discovered during the Spring Turnaround in the F-Train vessels, and sulfur was not an issue" (Doc. 190). Miller argues that Reese's testimony is not based on his personal knowledge or observation but rather, as Reese stated at deposition, "the local people that mustered there . . . from our side and from the P66 turnaround" (*Id.*; *see also* 190-7 at p. 26).

HydroChem responds that though Reese has no knowledge regarding the presence of sulfur in Spring 2018, there are "multiple additional sources of testimony which demonstrate that the degassing of the F-Train SRU in the Spring of 2018 was completed without incident" (Doc. 192). However, the fact that no fire or other incident occurred in Spring 2018 does not show that sulfur was or was not present. Moreover, HydroChem in its response seeks to reserve the right to introduce such testimony but does not explain how such testimony will meet the requirements of FED. R. EVID. P. 602 (a witness may testify to a matter only if evidence is introduced sufficient to support a

finding that the witness has personal knowledge of the matter). Thus, the Court **RESERVES** ruling on this motion *in limine*. Should HydroChem seek to introduce such evidence without meeting the requirements of Rule 602, the motion will be granted.

## Motion *in Limine* No. 11

Miller also argues that HydroChem should be barred from testimony regarding HydroChem's knowledge of materials, substances, contaminates, chemicals, compounds or elements present in the quench column at issue because Reese testified, "the only information that we were given that we was [was] going to be removing the Raschig rings after they have been chemically cleaned" (Doc. 190). The specific testimony to which Miller is objecting is vague, and this alone is reason for denial of the motion. *See, e.g. Rosenberg v. Cottrell, Inc.*, No. 05-545-MJR, 2007 WL 2028789, at *1 (S.D. Ill. July 12, 2007) (the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded).

To the extent Reese could testify that he had no knowledge of there being gases in the quench column at the time of cleaning, such testimony is based on his personal knowledge and may be admissible. If HydroChem can lay a proper foundation, then testimony regarding chemicals or other substances in the quench column is admissible. *See Mason*, 631 F. Supp. 2d at 1056 (N.D. Ill. 2009) (party seeking to exclude evidence "has the burden of establishing the evidence is not admissible for any purpose"). Thus, the motion in limine is **DENIED**.

## Motion *in Limine* No. 12

Miller seeks to bar evidence or argument regarding whether an inert atmosphere

should have been used to de-gas the quench column (Doc. 190). Miller argues that HydroChem has identified no witness, including Ogle, who will testify that an inert atmosphere method should have been used in lieu of the processes and procedures Miller used, and thus, such testimony "has no probative value" (*Id.*). In its response, HydroChem points to multiple individuals, including Ogle, who have provided deposition testimony regarding whether an inert atmosphere could have or should have been used (Doc. 192). Given HydroChem's theory that Miller breached a duty in the cleaning of the quench column, the Court cannot determine that such testimony will have *no* probative value if the correct foundation for it is laid. *See* FED. R. EVID. P. 401 (evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action).

To the extent Miller is arguing that there will not be adequate foundation for the testimony, or that its relevance will be outweighed by other factors under Rule 403, such determinations are best made during trial. *See* FED. R. EVID. P. 403 (court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence); *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (normally the balancing process contemplated by Rule 403 is best undertaken at the trial itself). Thus, the motion *in limine* is **DENIED**.

Motion <u>*in Limine* No. 14</u>

Miller seeks to bar evidence or testimony regarding a "black swirling cloud" observed in the quench column just prior to the incident in which Plaintiff Earl Pursell

was injured (Doc. 190). The statement in question can be found in an email from Ronald Weisar (Doc. 192-15), but he did not actually observe a "swirling dust cloud," because he was not on the premises at the time of the incident (Doc. 190-10 at p. 5). HydroChem, in its response, seeks to reserve the right to introduce such testimony but does not explain how the testimony will meet the requirements of FED. R. EVID. P. 602 (a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter) (Doc. 192). Thus, the Court **RESERVES** ruling on this motion *in limine*. HydroChem must comply with the Rules of Evidence if it endeavors to introduce such testimony and may not do so without first satisfying Rule 602. If HydroChem cannot do so, the motion will be granted or the objection at trial will be sustained.

## Motion *in Limine* No. 15

Finally, Miller seeks to bar testimony that "something was different in [Miller's] performance of the decontamination for the E-train" where the incident in question occurred as opposed to the F-Train, which Miller worked on before beginning work on the E-train unit (Doc. 190). Specifically, Miller refers to the following deposition testimony from Ogle:

> Q. How did the process Miller Environmental used to de-gas the F-Train unit differ at all from the process used on the E-Train unit?
>
> A. I don't know. You know, if we had the missing Miller Environmental job-logs, we might be able to answer that question.
>
> Q. Sitting here today, do you have any evidence, which shows Miller Environmental did not perform each of the steps set forth in its proposal in connection with the degassing of the E-Train unit?

> A. If we were to infer that the procedure used on the F-Train unit was successful and if we further assume that the procedure is the same as what was used for the E-Train than clearly something was different in the performance of the decontamination for the E-Train unit because contamination was left behind, and that's the source of the fuel for the fire.

(Doc. 190-4 at p. 23).

HydroChem hypothesizes that if Ogle had Miller's job logs related to the incident, he could point to a specific piece of evidence supporting such a conclusion (Doc. 192). HydroChem also argues that multiple witnesses have testified that the degassing of the F-Train was completed without incident (*Id*). However, Miller's decontamination work on the F-Train unit appears to be largely a collateral issue. *See Martinez v. City of Chicago*, No. 14-CV-369, 2016 WL 3538823, at *5 (N.D. Ill. June 29, 2016) (noting a primary purpose of motions *in limine* is to keep parties from creating unnecessary sideshows and mini-trials on issues of little relevance). Moreover, that a fire did not occur in F-Train is not proof in itself that the decontamination process was different. *See Deimer*, 58 F.3d 341, 344 (7th Cir. 1995) (holding that a court must "rule out" expert opinions based on "subjective belief or unsupported speculation"). Accordingly, motion *in limine* is **GRANTED** with respect to Ogle's speculative and collateral opinion on this subject. In granting this motion *in limine*, the Court does not mean to suggest that any and all evidence regarding the F-Train turnaround is inadmissible. It is plausible that some evidence may be admissible for context or in passing, but the Court is not inclined to allow extensive evidence on this subject as it appears to the Court at this time it is a collateral matter likely to confuse and mislead the jury.

## CONCLUSION

To summarize, Miller's Motions *in Limine* No. 5 and No. 15 are **GRANTED** with regard to testimony from Ogle. The Court **RESERVES** its ruling on Miller's Motions *in Limine* No. 10 and No. 14. Miller's Motions *in Limine* No. 9, No. 11, and No. 12 are **DENIED**.

IT IS SO ORDERED.

DATED: April 14, 2023

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
