IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EARL PURSELL III AND MONICA PURSELL, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 3:20-cv-01188-MAB |
| vs. | ) ) |
| HYDROCHEM, LLC, ET AL., | ) ) |
| Defendants. | ) ) ) ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Defendant/Third Party Plaintiff HydroChem, LLC ("HydroChem") requests that the Court issue Seventh Circuit Pattern Jury Instruction 1.20 or otherwise impose a spoliation "charge," which permits the jury to find that missing documentation from Third-party Defendant Miller Environmental, LLC ("Miller") would be harmful to Miller's case (Doc. 208 at p. 20). For the reasons outlined below, the Court denies HydroChem's request for an adverse inference instruction.

## BACKGROUND

On September 15, 2018, Plaintiff Earl Pursell III ("Pursell") was injured in a flash fire while he was removing equipment from a quench column at the Phillip 66 Refinery in Wood River, Illinois (Doc. 1-1). As relevant, Miller had been hired to de-gas or decontaminate the quench column prior to the fire (Doc. 32). On September 11, 2020,

Plaintiffs filed suit against HydroChem, ConocoPhillips Company, Cenovus Energy, and Phillips 66 WRB Partner, LLC. On November 5, 2020, Defendants removed the lawsuit to federal court. On May 14, 2021, HydroChem filed a third-party claim against Miller alleging that Miller's did not properly de-gas the column, leading to Pursell's injuries (Doc. 31).

During the discovery process, HydroChem requested records documenting Miller's de-gassing of the quench column, including the "Sulfur Unit E-Train Decontamination Vapor Phase Degassing Procedure," a document Miller used to record completion of each step of its de-gassing process, and job logs, which would have identified "when the chemical cleaning process began, when samples were taken, what the samples showed, and when . . . the chemical cleaning was complete" (Doc. 208 at p. 3; *see also* Docs. 208-1, 208-2).

Miller's FED. R. CIV. P. 30(b)(6) witness testified that normally, after Miller completed a job or project, the records pertaining to the project were shipped to Miller offices in Sulphur, Louisiana (Doc. 208-1 at p. 12-31). They were stored in a file cabinet for a year and then moved to storage boxes (*Id.*). To the best of Miller's knowledge, those storage boxes were moved from an office in Sulphur to a modular office at the same site sometime in 2019 and destroyed in Hurricane Laura in August 2020 (*Id.*).

Miller does not have a written document retention policy, but rather follows the guidelines in the master service agreements ("MSA") it has with its customers. (Doc. 208-5 at p. 7-8). Miller's MSA with Phillips 66 required that documents be retained for five years (*Id.*) Days after the incident in which Pursell was injured, Miller employees received

notice that "something happened" at the Phillip 66 Refinery (Doc. 208-6 at p. 2). HydroChem, however, never sent Miller a preservation letter or otherwise notified Miller in any way that it was investigating a claim against it until it formally filed its the third-party claim against Miller on May 14, 2021.

In its trial brief, HydroChem argues that evidence concerning Miller's missing project records is relevant and admissible, "because it may make Miller's position that it properly completed its chemical cleaning and decontamination of the quench column less believable while potentially making HydroChem's position more believable" (Doc. 208 at p. 10). HydroChem also argues that sanctions are appropriate, including Seventh Circuit Pattern Jury Instruction 1.20 or imposing a spoliation "charge" permitting the jury to find that missing documentation would be harmful to Miller's case, because Miller was under a duty to preserve the documents for five years and it was reasonably foreseeable that the project documents would be material to a lawsuit following Pursell's injury (Doc. 208 at p. 20).

In its response, Miller argues that lost records are not relevant and sanctions are not appropriate because Miller had no duty to preserve the job records, it was not reasonably foreseeable that the documents were material to a potential civil suit, and there is no evidence the documents were destroyed in bad faith (Doc. 214).

## DISCUSSION

### A. RELEVANCE

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the

action." FED. R. EVID. 401. In support of its argument that the loss of the Miller documentation is relevant, HydroChem cites *Schroeder v. City of Waukesha*. In that case, a man sued for violation of his civil rights after an arrest by police that he argued was done without probable cause. *Schroeder v. City of Waukesha*, No. 13-CV-696-JPS, 2014 WL 1663531, at *1 (E.D. Wis. Apr. 25, 2014). Police, inadvertently they argued, deleted a video of the moments leading up to the arrest. *Id.* The court found that the loss of the video tape was relevant because:

> In many ways, this case is a credibility contest. As the Court will discuss further, the parties strongly dispute the other's version of events on the day in question, and the claims in this case largely turn on whether there was probable cause to arrest Mr. Schroeder and how Mr. Schroeder acted in the situation . . . Because there is a vast gulf between the different accounts of the events, the loss of the one piece of evidence that could readily show exactly what occurred is highly suspicious . . . the Court finds that the deletion of the video is relevant because it makes the defendants' position and witnesses all the less credible (and may actually make Mr. Schroeder's version of events more believable).

*Id.* at 2.

Miller rightly points out that unlike in *Schroeder*, the loss of documentation in this case is not "highly suspicious." Here, Miller personnel sent the documents to Louisiana in the regular course of business. The documents were then boxed up and moved to a modular office for storage when they were more than a year old. More importantly, Miller personnel did not destroy the records before the five-year retention period ended. A natural disaster – *i.e.* a hurricane – destroyed the records. However, just because the loss of the business records was not suspicious does not mean that it is completely irrelevant. At trial, Miller witnesses will likely testify that they successfully completed

each step of the de-gassing procedure. HydroChem witnesses will likely testify that certain chemicals were found in the column that they would have expected to have been removed during a properly completed de-gassing procedure. That all the documents which could have backed up either Miller or HydroChem's version of events are no longer in existence is likely necessary background for the jury, even though the documents were destroyed by natural forces. *See Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) (necessary background information is relevant). Indeed, this is the type of information that is relevant and a reasonably likely topic on cross-examination of a Miller witness.

Miller argues that testimony regarding the lost documentation will confuse and mislead the trier of fact, and thus is inadmissible under Rule 403. *See* FED. R. CIV. P. 403 (court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence). However, evidence should only be excluded if its value is substantially outweighed by the danger of unfair prejudice. *Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013). In this case, Miller will have ample opportunity to explain that the documents were destroyed by an act of God, defusing any opportunity for prejudice. *Cf. Schroeder*, 2014 WL 1663531, at *2 (evidence of lost video not prejudicial where defense would have opportunity to explain how and why video was lost). Thus, testimony regarding the lost records is relevant to the extent it is necessary to explain why there is no documentation of Miller's de-gassing process, and the relevance is not outweighed by

prejudice to Miller. The Court cautions the parties that it will not permit a trial within a trial on this particular issue regarding the loss of the documents.

## B. SANCTIONS

Next the Court must determine if sanctions are appropriate, including Jury Instruction 1.20. The jury instruction reads as follows:

> [Party] contends that [Other Party] at one time possessed [describe evidence allegedly destroyed]. However, [Other Party] contends that [evidence never existed, evidence was not in its possession, evidence was not destroyed, loss of evidence was accidental, etc.].
>
> You may assume that such evidence would have been unfavorable to [Other Party] only if you find by a preponderance of the evidence that: (1) [Other Party] intentionally [destroyed the evidence] [caused the evidence to be destroyed]; and (2) [Other Party] [destroyed the evidence] [caused the evidence to be destroyed] in bad faith.

Seventh Circuit Pattern Jury Instruction 1.20.

The Court may only issue Jury Instruction 1.20 if Miller destroyed the documents at issue in bad faith.[1] *See Miksis v. Howard*, 106 F.3d 754, 762-763 (7th Cir. 1997) (party seeking adverse inference instruction must prove that other party intentionally destroyed evidence in bad faith); *see also Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983) (the Seventh Circuit "requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence" to support a missing or destroyed evidence instruction). Documents are destroyed in bad faith if they are intentionally

---

[1] The issue of an adverse inference has come up frequently during the Court's pretrial conferences with the parties. However, it is worth noting that at no point in this litigation has HydroChem ever filed a formal motion for sanctions, or a motion seeking an adverse inference. Rather, this issue manifested through motions in *limine* and a trial brief.

destroyed for the purpose of hiding adverse information. *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). Here, there is simply no evidence that Miller intentionally destroyed the documents at issue. They were destroyed in a hurricane. There is no evidence, other than HydroChem's speculation, that they were destroyed to hide information adverse to Miller's interests, and thus, HydroChem is not entitled to Jury Instruction 1.20. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 645 (7th Cir. 2008) (where there was no proof that documents were intentionally destroyed to hide adverse evidence, party was not entitled to inference that documents would have been adverse to opponents case).

HydroChem also argues that it is entitled to a "spoilation charge," in the form of an adverse inference instruction by which the jury could find that the missing documents would be detrimental to Miller's case, because Miller had a duty to retain the documents after its employees found out about Pursell's incident in 2018. Miller argues it had no duty until it received notice of the suit through HydroChem's complaint on May 14, 2021. However, even assuming Miller had a duty that arose before the documents were destroyed by Hurricane Laura in August 2020, HydroChem is not entitled to an adverse inference instruction absent a showing of bad faith.[2] *See Bracey v. Grondin*, 712 F.3d 1012,

---

[2] The timeline for Miller is critical. The incident occurred in September 2018, Hurricane Laura made landfall in August 2020. *See* Hurricane Laura Federal Response Update | FEMA.gov, https://www.fema.gov/press-release/20200827/hurricane-laura-federal-response-update, last viewed on April 17, 2023. The Pursells filed their lawsuit in state court in September 2020, and it was removed to this Court in November 2020. Miller still had not been notified of a potential claim against it. Rather, on May 14, 2021, Miller first learned of a claim against it by Hydrochem. At no point between September 2018 and August 2020 did Hydrochem send Miller a preservation letter or otherwise put Miller on notice of a potential claim against it.

1019 (7th Cir. 2013) (establishing a party's duty to preserve is not enough for an adverse inference instruction; opposing party must also show destruction in bad faith); *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681–82 (7th Cir. 2008) (affirming denial of spoliation sanction where no evidence of bad faith); *see also Banks v. Enova Fin.*, No. 10 C 4060, 2012 WL 5995729, at *1 (N.D. Ill. Nov. 30, 2012) (party entitled to spoliation charge, but not adverse instruction, where opposing party demonstrated gross negligence in destruction of records). Because there is simply no evidence of bad faith, or even gross negligence, on Miller's part, HydroChem is not entitled to an adverse inference or spoliation charge regarding the missing documents.

## Conclusion

The Court finds that the loss of Miller's records may be relevant to the extent it is necessary to explain why no documentation of Miller's de-gassing procedure exists. The Court **DENIES** HydroChem's request that Seventh Circuit Pattern Jury Instruction 1.20 be issued or for a similar sanction related to spoliation of evidence.

In light of this ruling, the objections to the deposition designations of Joseph Melton regarding record retention issues, which the Court took under advisement on April 11, 2023 (p. 105:13-20; p. 107:2-9; p. 127:6-13) are hereby **SUSTAINED**.

**IT IS SO ORDERED.**

**DATED: April 17, 2023**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**