## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **HYDROCHEM, LLC,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:20-CV-1188-MAB** |
| | ) | |
| **MILLER ENVIRONMENTAL, LLC,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court are a series of post-trial motions filed by Third-Party Plaintiff HydroChem, LLC ("HydroChem"), and Third-Party Defendant Miller Environmental, LLC ("Miller"). These motions include a motion for equitable relief under Rule 54(b) (Doc. 269), a motion for new trial (Doc. 272), and a motion to supplement (Doc. 274) filed by HydroChem, along with a motion to enforce settlement (Doc. 275) filed by Miller. Both parties have also filed several motions to file under seal (Docs. 268, 271, 273, 276, 277, 280, 282, 284, 286). For the reasons set forth below, HydroChem's motion for equitable relief under Rule 54(b) is DENIED (Doc. 269); HydroChem's motion for new trial is DENIED (Doc. 272); HydroChem's motion to supplement is GRANTED (Doc. 274); Miller's motion to enforce settlement is DENIED (Doc. 275); and the parties' numerous motions to file under seal are DENIED (Docs. 268, 271, 273, 276, 277, 280, 282, 284, 286).[1]

---

[1] The Court initially scheduled a status conference in this case to discuss the pending post-trial motions at a very high level with the parties (*See* Doc. 288). However, because of scheduling conflicts in the parties' schedule, the status conference was cancelled (Doc. 289). The Court has carefully reviewed the briefing and determined that oral argument is not necessary and the Court can decide all motions based on the briefing.

## PROCEDURAL AND FACTUAL BACKGROUND

This case arises in connection with a work-related incident that occurred at the Phillips 66 Wood River Refinery in September 2018 (Doc. 227, p. 3). Plaintiffs Earl Pursell, III, and Monica Pursell filed this action seeking to recover money damages for personal injuries and consortium injuries that resulted from the September 2018 incident (*see* Doc. 1-1).

After the case was removed to federal court (*see* Doc. 1), HydroChem filed a third-party complaint for contribution against Miller in May 2021 (Doc. 31). In that complaint, HydroChem stated Miller was hired by the landowner, Phillips 66, to decontaminate, clean, remove gases, and otherwise make safe the vessel/quench column V-18107 in preparation for boilermakers with Miller Industrial Services Team, Inc. ("MIST") to enter the vessel to vacuum Raschig rings (Doc. 31, p. 2). HydroChem alleged that Miller negligently failed to inspect and decontaminate the vessel, which resulted in the fire and explosion that caused Mr. Pursell's injuries.[2]

In November 2021, Mr. and Ms. Pursell, HydroChem, Phillips 66, and Miller reached an agreement to settle the Pursells' claims (Doc. 269, p. 2; Doc. 272-1, p. 3). This agreement, documented in the "Memorandum of Understanding" ("MOU"), established a timeline for payments to be made by HydroChem, Phillips 66, and Miller (the "defense parties") to the Pursells (Doc. 272-1, p. 3). As the agreement detailed, each defense party was to pay one third of a specified portion of the global settlement by December 7, 2021

---

[2] For significantly more details regarding the September 2018 incident and the procedural history of this action, see the Court's prior Orders (*see, e.g.*, Doc. 177) and the trial transcripts (Docs. 229, 232, 234, 235, 236, 239, 243, 246, 247, 248).

(*Id.*). The defense parties agreed to attempt to mediate their respective shares of responsibility for a second payment and to each pay one third of the second settlement payment if mediation was unsuccessful (*Id.*). As to the third and final settlement payment, the MOU states[3]:

> 6.     As well, if the mediation does not result in an agreement, final payment of ▮▮ will be made according to the respective shares of the Defense Parties as determined by trial of their contribution claims. The Parties shall cooperate in securing a trial date for the contribution claims to take place no later November 1, 2022 (subject of course to the Court's agreement). The Parties shall also cooperate in securing the Court's continued jurisdiction over the contribution claims of the Defense Parties against one another.

(*Id.*).

On January 10, 2022, Miller filed a crossclaim for contribution against HydroChem, Phillips 66, and MIST (Doc. 79). Thereafter, in March 2022, the parties reached an agreement regarding a portion of the settlement which was memorialized by an addendum to the settlement agreement (Doc. 272-1 at pp. 6-7; *see also* Doc. 270-2).[4] Specifically, Phillips 66 agreed to pay a certain portion of the settlement in exchange for a release of all claims against Phillips 66 and MIST (Doc. 270-2 at p. 1). The Addendum further stated:

> 5.     The obligations of HydroChem LLC and Miller Environmental

---

[3] Both the MOU and the Addendum were submitted to the Court with the included redactions. The Court finds these redactions to be permissible because the exact settlement amounts are not critical to resolving any of the issues presented in this case. *See Munson v. Keller*, No. 3:11-CV-159-MAB, 2021 WL 4456754, at fn. 1 (S.D. Ill. Sept. 29, 2021) (Permitting certain items to remain redacted because "the Court does not believe any of the information that is redacted is dispositive of the case or underpins the ultimate outcome."); *see also AXIS Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.*, 662 F. Supp. 3d 950, 960 (N.D. Ind. 2023) ("Additionally, the court will keep the documents in ECF 276 under seal because they contain settlement amounts and were not relied on by the court.").

[4] The MOU and Addendum are collectively referred to as the "settlement agreement."

Services, LLC ("Miller") to pay ▇▇▇ each (for a total of ▇▇▇) to Plaintiffs by June 1, 2022 as referenced in Paragraph 5 of the MOU shall remain in effect and have been satisfied as of this date.

6.      After deductions for the payments to Plaintiffs referenced herein (totaling ▇▇), Plaintiffs will be owed ▇▇. The responsibility to satisfy this ▇▇ obligation shall remain with HydroChem LLC and Miller, and shall be determined by mutual agreement between HydroChem LLC and Miller or by the trial of their contribution claims against one another as referenced in Paragraph 6 of the MOU. The determination by agreement or trial of the respective shares of responsibility of HydroChem LLC and Miller shall also include a reapportionment (if necessary) as between HydroChem LLC and Miller of the payments each of these parties has made to Plaintiffs in accordance with their respective shares of responsibility. Defendants shall remit payment of the final ▇▇ to Plaintiffs within 30 days of the final settlement between HydroChem LLC and Miller or within 30 days of the completion of the trial in the Southern District of Illinois (anticipated to be completed in November, 2022) and entry of a judgment.

7.      The parties agree that nothing in this Memorandum of Understanding precludes or otherwise bars HydroChem LLC and Miller Environmental Services, LLC from seeking reapportionment of any fault between the two and/or appellate review of any dispositive motions, findings rendered at trial, the verdict or post-trial motions relating to any apportionment of fault between HydroChem LLC and Miller Environmental Services, LLC.

(*Id.* at p. 2).

Pursuant to the Addendum, all claims against Phillips 66 and MIST were dismissed with prejudice, as were any crossclaims made by Phillips 66 and MIST (Doc. 151; *see also* Doc. 270-3). Consequently, this action proceeded upon HydroChem's and Miller's contribution claims against one another.

Trial began on April 18, 2023 (Doc. 228). However, just before the jury selection process commenced, Miller orally moved to dismiss its crossclaim for contribution against HydroChem with prejudice (Doc. 229 at transcript p. 15). The Court granted Miller's motion over HydroChem's objection (*Id.* at transcript pp. 15-17; *see also* Doc. 231).

As a result, the jury trial proceeded on HydroChem's contribution claim against Miller (Doc. 231). On April 26, 2023, the jury returned a verdict in favor of Miller on HydroChem's contribution claim (Doc. 256). Specifically, the jury determined that HydroChem had failed to prove its contribution claim against Miller and thus assessed 0% fault to Miller (*Id.*). Thereafter, the Court entered its judgment pursuant to Federal Rule of Civil Procedure 54(b) (Doc. 264).

Following the Court's judgment, HydroChem filed a motion for equitable relief under Rule 54(b) (Doc. 269; *see also* Docs. 279, 285). HydroChem then filed a motion for new trial (Doc. 272, *see also* Docs. 278, 283) and a motion to supplement its motion for new trial (Doc. 274). Thereafter, Miller filed a motion to enforce settlement (Doc. 275, *see also* Docs. 281, 287). In addition, the parties filed numerous corresponding motions to file under seal (Docs. 268, 271, 273, 276, 277, 280, 282, 284, 286).

<u>DISCUSSION</u>

1. *<u>HydroChem's Motion for Equitable Relief Under Rule 54(b) (Doc. 269)</u>*

HydroChem moves for equitable relief under Rule 54(b) and requests the Court order that HydroChem and Miller each pay half of the remaining global settlement balance (Doc. 269). In support of this argument, HydroChem asserts that the jury's verdict and the Court's Rule 54(b) judgment (Doc. 264) only addressed whether Miller owed contribution to HydroChem for its portion of the remaining global settlement. (Doc. 269 at pp. 6-7). Therefore, HydroChem claims the Court should provide equitable relief by ordering Miller to pay for half of the remaining global settlement payment (*Id.* at p. 8). In response, Miller argues the jury's verdict determined the rights and liabilities of all

parties (Doc. 279 at p. 1). Moreover, Miller argues that HydroChem is just attempting to relitigate issues that were already presented to the jury by filing a motion under the guise of Rule 54(b).

Rule 54(b) allows for judgment to be made in cases involving multiple claims or parties. Specifically, Rule 54(b) provides:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

In other words, Rule 54(b) "permits entry of a partial final judgment only when all of one party's claims or rights have been fully adjudicated, or when a distinct claim has been fully resolved with respect to all parties." *Factory Mut. Ins. Co. v. Bobst Grp. USA, Inc.*, 392 F.3d 922, 924 (7th Cir. 2004). Rule 54(b) thus allows for earlier appeals in certain, appropriate situations and likewise "enable[s] a party (and its adversaries) to determine at the earliest possible opportunity whether it is securely out of the litigation and therefore can stop worrying about and preparing for further proceedings in it." *Cont'l Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 518 (7th Cir. 1999).

Significantly, the Court is unaware of any precedent supporting the use of Rule 54(b) in the way sought by HydroChem. Nor has HydroChem supported its argument by citing to any cases reviewing motions for equitable relief under Rule 54(b). The Court's

independent research has also failed to reveal any such instances to support HydroChem's contention. Presumably, this is because there is no such thing as a motion for equitable relief under Rule 54(b).[5] In fact, a Rule 54(b) judgment/certification is used when there is a "final judgment" addressing one or more issues but fewer than all claims or parties. *See* Rule 54(b); *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 543 (7th Cir. 2019) (defining a final judgment for purposes of Rule 54(b)). Understandably then, it would be improper for a party to use Rule 54(b) to obtain relief on an issue it claims was left unaddressed, because in that situation the party would implicitly be challenging the propriety of a Rule 54(b) judgment while also seeking a favorable ruling upon the issue it claims was left unaddressed. *See generally Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980) (discussing the steps for making a Rule 54(b) determination).

Accordingly, HydroChem's motion is more appropriately treated as an indirect challenge to the Court's Rule 54(b) judgment which held that the jury's verdict fully determined the third-party contribution claim.[6] In this regard, HydroChem could appeal the propriety of the Court's Rule 54(b) judgment if it believes the jury's verdict only

---

[5] Tellingly, Westlaw searches of either "motion for equitable relief under Rule 54(b)" or "motion for equitable relief pursuant to Rule 54(b)" both provide no results when searching across *all* federal courts. That is not to say these are the only searches the Court conducted on this subject. Rather, the Court researched the issue extensively and failed to locate any precedent supporting the use of Rule 54(b) in the way HydroChem proposes.

[6] As will be discussed later on, Miller dismissed its contribution claim against HydroChem with prejudice, such that the issue can no longer be raised. Consequently, even if the Court were to assume that the jury's verdict only addressed half of the remaining global settlement, the other half would have been fully addressed by way of Miller's motion to dismiss its contribution claim with prejudice.

resolved half of the issue of contribution between HydroChem and Miller.[7] *See, e.g.,* *Rankins v. Sys. Sols. of Kentucky, LLC*, 40 F.4th 589, 592 (7th Cir. 2022) (explaining that when reviewing whether a district court's Rule 54(b) judgment was appropriate, appellate courts consider whether the district court's order was truly a final judgment and whether the district court abused its discretion by finding no just reason to delay the appeal of the adjudicated claim). However, it is neither logical nor appropriate to allow HydroChem to implicitly challenge the propriety of the Court's Rule 54(b) judgment while also seeking to benefit from equitable relief under that very same rule. For these reasons, HydroChem's motion for equitable relief under Rule 54(b) is DENIED (Doc. 269).[8]

### 2. *HydroChem's Motion for New Trial (Doc. 272)*

HydroChem filed its motion for new trial pursuant to Rule 59 on May 30, 2023 (Doc. 272). In this motion, HydroChem argues numerous errors prejudiced it and justify granting its motion for a new trial, including: (1) permitting Miller to dismiss its contribution claim against HydroChem, (2) several instructional errors, (3) allowing improper arguments during the trial, and (4) permitting expert testimony by an individual who was not qualified (*see generally Id.*). In response, Miller argues: (1) nothing

---

[7] In fact, HydroChem has indirectly challenged the Court's judgment in the instant motion by arguing that the jury's verdict only resolved the contribution claim as to HydroChem's share of the final settlement payment and not Miller's.

[8] HydroChem also filed a motion to supplement its exhibits to its motion for new trial and motion for equitable relief (Doc. 274). In this motion, HydroChem seeks to supplement its exhibits because two of the exhibits it previously provided to the Court were versions of those documents that had not been executed by Miller (*Id.* at p. 2). The Court GRANTS HydroChem's motion to supplement and has considered the supplemented exhibits provided by HydroChem.

required it to prosecute its crossclaim against HydroChem, (2) HydroChem was not prejudiced by the dismissal of Miller's crossclaim, (3) the jury was properly instructed, (4) Miller did not make any improper arguments, and (5) HydroChem forfeited its challenge to Miller's expert by failing to object (*see generally* Doc. 278). The Court addresses each of these challenges in turn.

### A. Applicable Legal Standard

Rule 59(a)(1)(A) allows for courts to grant a motion for new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" As the Seventh Circuit has repeatedly emphasized, "[a] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018) (quoting *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014)). The determination as to whether to grant a new trial is committed to the trial court's discretion and will only be disturbed in exceptional circumstances showing a clear abuse of discretion. *Id*.

Under this standard, movants "bear a 'particularly heavy burden' because a court will set aside a verdict as contrary to the manifest weight of the evidence 'only if no rational jury could have rendered the verdict.'" *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (quoting *Moore ex. rel. Estate of Grady, v. Tuleja,* 546 F.3d 423, 427 (7th Cir. 2008)). Moreover, evidence is viewed "in the light most favorable to the prevailing party, leaving issues of credibility and weight of evidence to the jury." *Id.* at 444-45.

B.  *Dismissal of Miller's Crossclaim*

The bulk of HydroChem's motion for new trial focuses upon the Court's decision to allow Miller to dismiss its crossclaim against HydroChem on the morning of the first day of trial, before the jury selection process commenced (*see* Doc. 272 at pp. 5-13). HydroChem asserts that the settlement agreement required Miller to prosecute its crossclaim for contribution, and the Court erred when it allowed Miller to dismiss its crossclaim with prejudice (*Id.* at pp. 9-11). HydroChem also argues it suffered plain legal prejudice due to the last-minute change in posture of the case based upon the dismissal of Miller's crossclaim (*Id.* at pp. 11-13).

The Court is not persuaded by any of HydroChem's contentions. As an initial matter, the Court has carefully reviewed the record and at no point did HydroChem move, orally or otherwise, to enforce the settlement agreement in this particular fashion (*see generally* Doc. 229). In fact, even when HydroChem objected on the record (Doc. 229 at transcript pp. 15-16), HydroChem did not ask the Court to enforce the settlement agreement or take any affirmative action to try and put this specific request before the Court.[9] Indeed, HydroChem certainly could have requested a continuance or an adjournment of the trial and filed a motion to enforce the settlement agreement and prevent Miller from moving forward with its dismissal (*i.e.*, formally raised and briefed this issue). But HydroChem did not do so.[10] Consequently, the Court cannot be expected

---

[9] At one point, HydroChem even acknowledged that if Miller wished to move forward with the dismissal of its crossclaim with prejudice, HydroChem "can't control them" and can later sue them for "breach of contract" and "breach of the settlement agreement." (*See* Doc. 229, pp. 15-16).

[10] The parties' statements made on the morning of trial appear to indicate that both parties were aware of this potential issue and had discussed it at least one day prior to trial (Doc. 229, pp. 6-7) (the Court, however,

to enforce an outside agreement unless there is a clear request by a party to do so or motion asking the Court to take this specific action. *See James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 401 (7th Cir. 2006) ("District judges are not mind readers.... Even assuming that [the plaintiff] properly moved to amend, the district court did not abuse its discretion in dismissing with prejudice, since it had no way of knowing what the proposed amendment entailed."); *Livingstone v. DeVry Univ., Inc.*, No. 20-CV-05567, 2023 WL 6551172, at *2 (N.D. Ill. Sept. 30, 2023) (When a party breached a condition of the settlement agreement in a case still properly pending before the court, the nonbreaching party could either "bring a separate suit for breach of contract while the case remained pending or it could move to enforce the Agreement[.]"); *see also Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 449 (7th Cir. 2004) ("The district court acted *sua sponte* when it went beyond the relief Inland requested and ordered enforcement of the agreement. *Sua sponte* judgments are disfavored.").

Furthermore, the Court is not certain the language in the settlement agreement required Miller to maintain a crossclaim for contribution against HydroChem to jury verdict. In both the MOU and the Addendum, the language states that apportionment will be either agreed to amongst the parties, or by "trial of their contribution claims." (Doc. 272-1 at pp. 3 & 7). This language indicates that a trial was only contemplated if other agreements failed, not that it was required in all situations (*Id.*). Moreover, the

---

was not privy that this issue was lurking until the morning of trial). Accordingly, HydroChem had the ability to file a motion on this issue even before Miller orally moved to dismiss its crossclaim. This also tends to cast doubt on HydroChem's contention that Miller's motion took them by surprise on the morning of trial.

Court will not ascribe too great of significance to the agreement's use of the plural, given that there were a significant number of additional parties in the case throughout the litigation and at the time of the initial settlement. If the parties had intended for it to be mandatory that Miller raise and try a contribution claim against HydroChem to verdict in the event they could not reach an agreement on apportionment, more specific language to this effect (*e.g.*, specifically identifying the parties by name or precluding the dismissal of non-settled contribution claims) could have easily been included in the settlement agreement. *See Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) (Illinois law imposes 'a strong presumption against provisions that easily could have been included in the contract but were not.'"); *Fix v. Quantum Indus. Partners LDC*, 374 F.3d 549, 553 (7th Cir. 2004). Additionally, even if the language in the settlement agreement were considered to mandate the pursuit of a crossclaim for contribution by Miller to a jury verdict, Miller's strategic decision to dismiss its crossclaim for contribution could result in a breach of contract, which is something HydroChem could pursue in a separate action. Indeed, HydroChem acknowledged as much prior to trial when it specifically noted that it "can't control" Miller and prevent it from dismissing its crossclaim but it can sue Miller for breach of contract. (*See* Doc. 229, pp. 15-16).

HydroChem similarly argues that the language in the settlement agreement should have been treated as a binding stipulation between the parties (Doc. 272 at p. 11). As discussed above, the Court is not persuaded by HydroChem's argument that the settlement agreement created any such binding requirement that Miller must affirmatively pursue a crossclaim for contribution. *See In re O'Neill*, 468 B.R. 308, 337

(Bankr. N.D. Ill. 2012) (trial courts have "broad discretion" to decide whether to hold a party to its stipulation). If the parties intended this to be so, the Final Pretrial Order very easily could have included a stipulation by the parties that they both shall continue to prosecute their contribution claims against one another, but it does not (*see* Doc. 227). *See also Erff v. MarkHon Indus., Inc.*, 781 F.2d 613, 617 (7th Cir. 1986) ("Because the parties rely on the pre-trial conference to inform them precisely what is in controversy, the pre-trial order is treated as superseding the pleadings and establishes the issues to be considered at trial.").

In fact, HydroChem's own briefing appears to acknowledge that there was no express stipulation, stating "[t]he settlement agreement at issue here not only imposed contractual obligations upon Miller, but also ***effectively served as*** a stipulation regarding the issues to be tried." (Doc. 272 at p. 11). Accordingly, not only is HydroChem arguing that the Court should have forced Miller to continue prosecuting a claim Miller was seeking to dismiss with prejudice, but also that it should have done so based upon language that "effectively served as a stipulation" but was not a clear, unequivocal stipulation. This is simply not enough to justify such an extreme measure.

In addition, the Court rejects HydroChem's argument that it suffered plain legal prejudice by Miller's withdrawal of its crossclaim *with prejudice*. As Miller emphasized in its response (Doc. 278 at p. 10), this situation is distinct from instances where a district court has dismissed a claim or party *without prejudice. See Crenshaw v. Portfolio Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1061 (W.D. Ky. 2020) (stating it is unclear "what 'legal prejudice' Defendants could possibly face" from a dismissal with prejudice). Notably, a

dismissal with prejudice is far less likely to constitute an abuse of discretion because it does not create the risk that a party will refile its claim at a later date. *See Ratkovich By & Through Ratkovich v. Smith Kline*, 951 F.2d 155, 159 (7th Cir. 1991) (finding the district court did not abuse its discretion by dismissing the plaintiff's suit with prejudice, as opposed to without prejudice, because a dismissal with prejudice avoided the risk of even greater prejudice to the defendants by the potential of the action being refiled). For this reason, the cases cited by HydroChem to support its arguments are readily distinguishable because they deal with dismissals *without* prejudice.[11] *See, e.g., Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969) (finding the district court was justified in denying the plaintiff's motion to dismiss without prejudice given the time and expenses the defendant had already devoted to the case); *Design Basics, LLC v. Heartland Builders of NWI, Inc.*, No. 2:18CV436-PPS, 2021 WL 3053280, at *3 (N.D. Ind. July 19, 2021) (denying the plaintiff's motion to voluntary dismiss the action without prejudice and instead granting dismissal with prejudice based upon the case's procedural posture). In comparison, it is hard to determine how HydroChem was prejudiced in this situation since Miller cannot refile its contribution claim against HydroChem.[12] *See Prokop v. Hileman*, 588 F. Supp. 3d 825, 840–41 (N.D. Ill. 2022) ("[A] dismissal with prejudice is a dismissal on the merits.").

Finally, the Court also finds HydroChem was not prejudiced by the "surprise" of Miller's last-minute dismissal of its contribution crossclaim. This is because nothing

---

[11] Similarly, the Court does not believe it is necessary to weigh the factors outlined in *Pace* and *Ratkovich* because those factors are applied when reviewing a dismissal without prejudice. *See Crenshaw*, 433 F. Supp. 3d at 1061 ("It is unclear, however, if [the *Pace*] factors are fully applicable to the case at hand.").

[12] And, as will be discussed below, the Court finds Miller cannot now attempt to recover any contributions from HydroChem for this very reason.

about dismissing Miller's crossclaim impacted the burden of proof that HydroChem always had to prove its own contribution claim. Neither the settlement agreement nor any of the pretrial filings provide support for the contention that HydroChem bore a lower burden of proof on its contribution claim against Miller simply because Miller filed a crossclaim for contribution against HydroChem. Rather, each party would bear the burden of demonstrating that it was entitled to contribution from the other party. In addition, HydroChem has failed to cite to any support for its argument that the surprise of a last-minute dismissal *with prejudice* could constitute plain legal prejudice based upon HydroChem's subjective belief as to how the trial would proceed.[13] Again, HydroChem always bore the burden of proof on its own contribution claim, regardless of whether Miller's crossclaim was dismissed or not.

HydroChem has failed to demonstrate that it suffered plain legal prejudice based upon the dismissal of Miller's crossclaim with prejudice. Accordingly, the Court did not err or abuse its discretion by allowing Miller to dismiss its crossclaim against HydroChem with prejudice.

## C. *Instructional Errors*

HydroChem also argues its motion for new trial should be granted because of several instructional errors that occurred during the course of this litigation (Doc. 272 at

---

[13] Moreover, if HydroChem truly believed that Miller's dismissal of its crossclaim on the morning of trial was prejudicial, it certainly could have asked the Court to continue the trial setting as a result of the change in posture. Indeed, all of this occurred before the *voir dire* panel had been brought to the Courtroom. Accordingly, HydroChem could have requested to continue or for a short adjournment to account for this claimed surprise. However, again here, the Court has reviewed the transcript of the proceedings and at no point did HydroChem ever request a continuance of the trial as a result of the change in posture.

pp. 13-17). First, HydroChem alleges the Court erred by refusing to issue a spoliation or adverse inference instruction based upon Miller's missing project records (*Id.* at pp. 13-15). Next, HydroChem argues the Court's burden of proof and contribution instructions were erroneous (*Id.* at pp. 15-17).

### a. Applicable Legal Standard

To obtain a new trial based upon an instruction error, HydroChem must demonstrate both that the instructions failed to properly state the law and that it was prejudiced by the error because the jury was likely to be confused or misled. *See Rapold v. Baxter Int'l Inc.*, 718 F.3d 602, 609 (7th Cir. 2013). "We evaluate the jury instructions in their entirety when determining whether they properly informed the jury of the applicable law." *Brooks v. City of Kankakee, Illinois*, 7 F.4th 649, 663 (7th Cir. 2021) (internal quotation marks and citation omitted).

### b. Spoliation or Adverse Inference Instruction

HydroChem contends that the Court erred by refusing to issue a spoliation or adverse inference instruction based upon Miller's failure to preserve its records related to the decontamination work it performed at the Wood River Refinery (Doc. 272 at p. 13). In response, Miller argues HydroChem failed to demonstrate Miller had a duty to preserve its records under Illinois law and failed to demonstrate that Miller intentionally hid or destroyed the records (Doc. 278 at pp. 11-13).

The Court has already issued several rulings on this topic with detailed rationale as to its decision (*see, e.g.*, Doc. 224) (denying HydroChem's request to issue Seventh Circuit Pattern Jury Instruction 1.20 or to impose a similar sanction for spoliation of

evidence). Accordingly, the Court will summarize a few key points. First, there is absolutely no evidence that Miller acted in bad faith or intentionally destroyed the records at issue (*Id.* at p. 4). Rather, they were destroyed by a natural disaster – *i.e.,* a hurricane (*Id.*). Second, while the records were potentially relevant, the harm caused by their loss could be and was mitigated by cross-examination of Miller's witnesses on this subject (*Id.* at p. 5). And third, Miller was not put on notice of a potential claim against it until May 2021, roughly ***nine months after*** the documents were destroyed by Hurricane Laura in August 2020 (*Id.* at p. 7).

Tellingly, a party is not entitled to a spoliation or adverse inference instruction absent a showing that the evidence was destroyed in bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). "A document is destroyed in bad faith if it is destroyed for the purpose of hiding adverse information." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (internal quotation marks and citation omitted). Here, HydroChem has failed to make a showing of bad faith. As noted above, the records were destroyed by a natural disaster many months before Miller was even put on notice of a claim against it. Accordingly, the timeline of events completely undercuts HydroChem's contention that Miller acted with an intent to hide adverse information. Moreover, Miller's shipment and storage of the records in Louisiana occurred during its regular course of business (Doc. 224 at p. 4). In other words, there is simply no evidence to demonstrate or even suggest Miller did anything unusual or suspicious with the records in question prior to their destruction. On top of that, HydroChem was given wide latitude to cross-examine Miller's witnesses on this subject during the trial and HydroChem took full advantage of

this latitude (*see, e.g.*, Doc. 243 at transcript pp. 631-35; Doc. 248 at transcript p. 896). However, there was simply no evidence to demonstrate that Miller acted in bad faith and accordingly, HydroChem was not entitled to an adverse inference instruction. *See Bracey*, 712 F.3d at 1018. For these reasons, the Court did not err in refusing to issue a spoliation or adverse inference instruction.

### c.   Burden of Proof Instruction

HydroChem also avers that the Court erred by giving an instruction that placed the burden of proof upon HydroChem (Doc. 272 at pp. 15-16). Specifically, HydroChem claims that pursuant to the settlement agreement, neither party should have bore the burden of proof because trial was to be limited to determining the parties' respective shares of culpability (*Id.*). In response, Miller argues that HydroChem's position is incorrect because HydroChem always had the burden of proving its own contribution claim and HydroChem failed to object to the Court's proffered instruction which was modeled off of I.P.I. 600.10 (Doc. 278 at pp. 15).

The parties disagree as to whether HydroChem preserved its objection to the Court's burden of proof instruction. Significantly, "[a] party waives an argument on appeal if that argument relates to a jury instruction it failed to object to." *Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000). HydroChem cites to the record from the final jury instruction conference for support that it objected to the burden of proof instruction (Doc. 283 at p. 6). However, the portion of the record HydroChem cites to does not include an objection to the burden of proof instruction (*see* Doc. 260, transcript pp. 966-67). And upon further review of the record, the Court has not found any other clear objection by

HydroChem to this instruction in the record. Accordingly, HydroChem has waived any argument that the Court's burden of proof instruction was incorrect.

Nonetheless, even if HydroChem had properly raised an objection to this instruction, HydroChem's argument fails because the instruction accurately states the law. In fact, HydroChem is not even claiming that the burden of proof instruction misstated the law generally. Instead, HydroChem is arguing that based upon the parties' settlement agreement, HydroChem should not have had to bear the burden of proof at all, irrespective of the fact that this case proceeded to trial on HydroChem's contribution claim against Miller. However, as discussed above, that contention is erroneous. HydroChem was the third-party Plaintiff in this action and therefore, HydroChem bore the burden of proof on its own contribution claim against the third-party Defendant, Miller. The settlement agreement cannot change the burden applicable to HydroChem's contribution claim; it cannot relieve a plaintiff of its obligation to carry its burden of proof in a jury trial. Additionally, to the extent that HydroChem is attempting to reassert that Miller should not have been permitted to dismiss its crossclaim with prejudice, the Court has already addressed this issue and declines to do so again.

> d. *Contribution Instruction*

HydroChem next argues that the Court's contribution instruction under I.P.I. 600.09 was erroneous because it misled the jury to believe that only HydroChem agreed to pay the Pursells a sum of money (Doc. 272 at p. 17). HydroChem also asserts that the instruction was erroneous because it only listed one of four ways in which Miller was

potentially negligent (*Id.*). Miller counters that HydroChem has failed to explain how this instruction contained an incorrect message and caused prejudice (Doc. 278 at pp. 15-16).

Ultimately, the Court is not persuaded by either of HydroChem's arguments. For one, HydroChem has not explained how the given instruction misstated the law or failed to convey the relevant legal principles in full. *See Cotts v. Osafo*, 692 F.3d 564, 567 (7th Cir. 2012) ("Instructions that misstate or insufficiently state the law warrant a new trial when the instructions prejudice the losing party."); *see also Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 765 (7th Cir. 2003) (no instructional error where both challenged statements were legally accurate). In this instance, the Court does not see (and HydroChem has not pointed to) any errors in the instruction's restatement of the law.

Similarly, HydroChem has not adequately explained how it was prejudiced by the Court's instruction which stated HydroChem agreed to pay a certain sum of money to the Pursells — as this statement is entirely true. While HydroChem argues this instruction should have also stated that Miller agreed to pay the Pursells, such an explanation was unnecessary after Miller dismissed its crossclaim against HydroChem. Put simply, whether or not Miller already paid settlement money to the Pursells was not important to the jury's task of determining whether Miller should pay contribution to HydroChem based upon its actions. Moreover, it is unclear to the Court why an accurate representation of the third-party Plaintiff's position and desire to receive contribution would be prejudicial to HydroChem. In that same regard, HydroChem has altogether failed to explain how the alleged instructional error impacted the outcome of this case. *See Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012) (Even when an instruction

is erroneous, "we ask, in light of the other instructions, the evidence, and the arguments advanced by the parties, whether the 'correct message [was conveyed] to the jury reasonably well,' such that the erroneous instruction likely made no difference in the outcome.").

### D. Improper Closing Argument

HydroChem also contends that the Court erred by permitting Miller to attribute fault to HydroChem during its closing argument (Doc. 272 at pp. 18-19). Specifically, HydroChem argues that it was improper for Miller to attempt to attribute fault to HydroChem based upon a theory of how the fire originated "for which there is no scientific possibility." (*Id.*). Miller challenges HydroChem's assertion and also argues that HydroChem forfeited this argument by failing to object (Doc. 278 at pp. 16-18).

As the Seventh Circuit has explained, "[i]mproper statements should be objected to when made, so as to give the trial judge a chance to correct any prejudice caused by the statement." *Lewis*, 590 F.3d at 444. Tellingly, HydroChem has not pointed to any objection it raised on the record related to this point. In fact, even after Miller made this exact argument in its response brief (Doc. 278 at p. 17), HydroChem simply ignored this point and failed to identify any objection in the record (*see* Doc. 283 at pp. 7-8). HydroChem's silence on this point is telling. Indeed, the Court also independently reviewed the record of the parties' closing arguments and there was no objection by HydroChem at any point during Miller's closing argument (*see generally* Doc. 260 at transcript pp. 998-1029). Accordingly, HydroChem has forfeited this argument.

But even if HydroChem had timely objected to this portion of Miller's closing argument, HydroChem still fails to explain how that argument resulted in substantial prejudice to HydroChem, thus warranting a new trial. For one, Miller's closing statements regarding the cause of the fire were made based upon the testimony of Walter Ricks, who was working with Mr. Pursell inside the quench column and provided eye witness testimony of the incident (Doc. 278 at p. 17). In addition, the Court instructed the jury in both the preliminary and final jury instructions that "the lawyers' opening statements and closing arguments to you are not evidence." (Doc. 253, p. 5; *see also* Doc. 252, p. 3). *See Viramontes v. City of Chicago*, 840 F.3d 423, 431 (7th Cir. 2016) ("There is a longstanding presumption that 'curative instructions to the jury mitigate harm that may otherwise result from improper comments' during closing argument."). Therefore, even if Miller's closing arguments were improper and even if HydroChem objected, there was little risk of harm because of the Court's curative instructions to the jury.

E.  *Expert Testimony*

Lastly, HydroChem moves for a new trial based upon the Court's admission of Miller's expert, James Ungart (Doc. 272 at pp. 19-20). HydroChem claims Mr. Ungart should not have been permitted to offer his opinions and testimony because he was not qualified to do so (*Id.*). Miller responds that HydroChem has forfeited this argument by failing to object to Mr. Ungart's testimony during the trial (Doc. 278 at pp. 18-20). Miller also argues that HydroChem has failed to show how the admission of any allegedly improper testimony created a significant chance of affecting the outcome of the trial (*Id.* at p. 20).

The Court has already considered and rejected several challenges to the admission of Mr. Ungart's expert testimony (*see* Docs. 166, 168, 212). Notably, the Court found Mr. Ungart was qualified to offer expert testimony based upon his experience and background in the chemical cleaning industry (Doc. 168 at p. 6). To this extent, the Court again rejects HydroChem's arguments that Mr. Ungart lacked the requisite experience and qualifications to offer expert opinions. "The Federal Rules of Evidence, which *Daubert* interprets rather than overrides, do not require that expert witnesses be academics or PhDs, or that their testimony be 'scientific' (natural scientific or social scientific) in character." *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). Mr. Ungart testified to his extensive training and experience in the chemical cleaning industry and to having reviewed materials relevant to this proceeding to arrive at his opinions (*see generally* Docs. 246, 130-2). Ultimately, as the Court previously held, HydroChem's challenges to Mr. Ungart's opinions go to the weight of the evidence rather than its admissibility (*see* Doc. 168 at p. 7).

Moreover, to the extent HydroChem is challenging the admission of specific portions of Mr. Ungart's testimony, the Court finds HydroChem failed to raise timely objections. For instance, HydroChem has cited to numerous points in the transcript where Mr. Ungart discusses static electricity in one way or another (*see* Doc. 272 at p. 20). Yet, HydroChem has not cited to any specific objections it lodged in response to Mr. Ungart's testimony in that area and the Court has not found any such objections in the record (*see generally* Docs. 246, 248). *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) ("When a defendant does not object to the admission of evidence during the

trial, the objection is waived and cannot be raised for the first time in a motion for new trial or on appeal.").

Finally, the Court also finds that HydroChem has failed to explain how the admission of Mr. Ungart's testimony "affected the outcome of the trial such that it violated [HydroChem's] substantial rights." *Smith v. Hunt*, 707 F.3d 803, 808 (7th Cir. 2013). Admittedly, HydroChem's reply brief claims that it pointed out 22 instances of improper opinions offered by Mr. Ungart (Doc. 283 at p. 8).[14] Yet, regardless of whether HydroChem adequately alleged improper opinions offered during Mr. Ungart's testimony, "[a] court should only grant a new trial if the improperly admitted evidence had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *Shick v. Illinois Dep't of Hum. Servs.*, 307 F.3d 605, 611 (7th Cir. 2002) (internal quotation marks and citations omitted). Consequently, HydroChem's argument fails because HydroChem has not explained how Mr. Ungart's testimony had "substantial influence over the jury" or why the jury's verdict was "inconsistent with substantial justice." *Id.*

### 3. *Miller's Motion to Enforce Settlement (Doc. 275)*

Miller has filed a motion to enforce the "reallocation provision" in the parties' settlement agreement (Doc. 275). Specifically, Miller claims that HydroChem must reimburse it for payments it has already made under the settlement agreement because the jury found HydroChem to be 100% at fault (*Id.* at pp. 1-2). In response, HydroChem

---

[14] HydroChem did not fully expand upon this point or elaborate as to each of the 22 allegedly improper opinions offered by Mr. Ungart (*see* Doc. 283, p. 8; Doc. 272, p. 20).

argues Miller is precluded from seeking contribution because Miller voluntarily dismissed its crossclaim for contribution with prejudice (Doc. 281).

The Court will not belabor this point. Miller voluntarily moved to dismiss its crossclaim against HydroChem with prejudice (*see* Doc. 229 at transcript p. 15). "A dismissal 'with prejudice' [forecloses Miller] from returning to federal court to litigate the issues they raised in the case[.]" *Peshek v. Timberlake*, No. 21-CV-1061-PP, 2023 WL 2710382, at *1 (E.D. Wis. Mar. 30, 2023); *see also Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007) ("[W]hen a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction."). Consequently, Miller is prohibited from seeking recoupment for prior settlement payments because it voluntarily dismissed its claims for such with prejudice (*see generally* Docs. 229, 231). *See also Bernstein v. Bankert*, 733 F.3d 190, 224 (7th Cir. 2013) ("Obviously, in contrast to a dismissal without prejudice, any such determination disposes of the claims before the court permanently. If the Trustees' declaratory judgment claim against Auto Owners cannot be brought in this instance due to an earlier, binding determination of the claim or of the dispositive issues, then it cannot be brought in any future instance without running into the same problem.").

Moreover, the Court is not persuaded by Miller's attempt to label its current recovery efforts as a distinct motion to enforce the reallocation provision of the parties' settlement agreement rather than a claim for contribution. Miller made a strategic decision to dismiss its crossclaim for contribution, thus avoiding any burden being

imposed upon Miller to prove its claim at trial.[15] To allow Miller to benefit from not having had to bear the burden of proving its crossclaim for contribution, while also receiving the same "reallocation" would be remarkably unjust. Choices have consequences and Miller must live with the consequences it created by dismissing its crossclaim for contribution with prejudice. For all these reasons, Miller's motion to enforce the settlement agreement is DENIED.

**4.** **_Motions to File Under Seal (Docs. 268, 271, 273, 276, 277, 280, 282, 284, 286)_**

Both parties have filed numerous motions to file their post-trial motions and certain accompanying documents under seal. Specifically, HydroChem has filed six motions to file under seal, all of which generally argue that it should be permitted to file the associated motions and responses under seal because the settlement agreement contains a confidentiality clause (*see* Docs. 268, 271, 273, 280, 282, 284). Miller has also filed three motions to file under seal, all of which similarly argue that they should be permitted to file these documents under seal because they discuss certain terms of the settlement agreement, and that agreement was meant to be confidential (*see* Docs. 276, 277, 286).

Pertinently, the Court rejected previous attempts by HydroChem and Miller to seal their responses because they quote portions of the settlement agreement (*see* Docs.

---

[15] In this regard, even if Miller had never filed a crossclaim for contribution, the Court does not believe it would be permissible for Miller to simply recover under the settlement agreement without having bore the burden of proof at any point. Certainly, a party seeking to recover damages upon its own claims should be required to prove those claims. Anything less would only incentivize both parties to play a waiting game in hopes of the other party filing a contribution claim first so they do not have to bear any burden for their own recovery.

178, 180, 213). In that Order, the Court referenced the strong presumption in favor of public disclosure and held that HydroChem and Miller failed to provide any compelling reasons for secrecy (Doc. 213 at p. 2). The Court explicitly held that the confidentiality agreement in the settlement was not, without more, a sufficient reason to justify sealing the records at issue (*Id.*).

Rather than heed the Court's directive in its prior Order, the parties have again requested to file numerous documents under seal solely because of their agreed to confidentiality in the settlement agreement. Having had the benefit of reviewing the Court's prior Order regarding motions to seal, one may have expected the parties to at least attempt to provide additional, sufficient justifications for moving to file under seal. They have not. "Neither HydroChem nor Miller offer any reason for secrecy except that the parties have agreed to confidentiality." (*Id.*). This reason alone warrants denying the parties numerous motions to seal. *See Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 835 (7th Cir. 2013) ("[B]ecause there is potential public value to disclosing settlement terms, including amount, parties have to give the judge a reason for not disclosing them—and the fact that they don't want to disclose is not a reason.").

Additionally, the procedural posture of this case and the nature of the substantive post-trial motions and filings the parties seek to file under seal provides further reason to deny their requests. For one, the Court's denial of HydroChem's and Miller's prior motions to seal has already resulted in numerous portions of the settlement agreement appearing on the record (*see, e.g.*, Doc. 181). In other words, the information is already publicly available. *See United Auto. Ins. Co. v. Veluchamy*, No. 09 C 5487, 2010 WL 889980,

at *1 (N.D. Ill. Mar. 11, 2010) (When information was already publicly disclosed, "sealing could not achieve the goal sought by the defendant, and the law never requires an idle thing to be done."). Similarly, this matter has already been tried to a jury in a public courtroom and the record contains references to the same details and documents the parties now claim must be kept confidential (*See, e.g.*, Doc. 229 at transcript pp. 9 & 13). As the Seventh Circuit has aptly observed: "[p]eople who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

Moreover, the three substantive motions pending before the Court rely extensively upon the settlement agreement that the parties seek to keep confidential. "As we remarked in *Union Oil,* many litigants would like to keep confidential the salary they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 547 (7th Cir. 2002). Here, while Miller's motion to enforce settlement may be most obviously reliant upon the settlement agreement, a cursory review of all three motions shows that the settlement agreement is critical to each motion. *See also Goesel*, 738 F.3d at 834 ("But for the most part settlement terms are of potential public interest only when judicial approval of the terms is required, or they become an issue in a subsequent lawsuit, or the settlement is sought to be enforced. In all such cases the presumption of a right of public access to court documents should apply.").

Finally, the Court notes that the documents the parties have sought to file under seal contain redactions. To this extent, the Court fails to see what non-redacted information the parties wish to keep from public disclosure. The Seventh Circuit expressed similar confusion in *Goesel*, stating "[t]he only issue is whether the redacted agreement, which *is* in the judicial record, should be under seal, as the defendants request. I can't understand why they want that, since almost everything of any possible interest has been redacted, including the size of the settlement." 738 F.3d at 835.

For all these reasons, the parties' motions for leave to file under seal are **DENIED** (Docs. 268, 271, 273, 276, 277, 280, 282, 284, 286), and the Clerk of Court is instructed to **UNSEAL** the corresponding documents that were filed under seal (Docs. 268, 271, 274, 278, 279, 281, 283, 285, 287).

<u>C</u><u>ONCLUSION</u>

For the reasons outlined above, HydroChem's motion for equitable relief under Rule 54(b) is DENIED (Doc. 269); HydroChem's motion for new trial is DENIED (Doc. 272); HydroChem's motion to supplement is GRANTED (Doc. 274); Miller's motion to enforce settlement is DENIED (Doc. 275); and the parties' numerous motions to file under seal are DENIED (Docs. 268, 271, 273, 276, 277, 280, 282, 284, 286). The Clerk of Court is instructed to UNSEAL the documents that were filed under seal by the parties (Docs. 268, 271, 274, 278, 279, 281, 283, 285, 287).

**IT IS SO ORDERED.**

**DATED:  February 28, 2024**

s/ Mark A. Beatty_____
**MARK A. BEATTY**
**United States Magistrate Judge**